The first case on the call of the docket is Agenda No. 4, Case No. 131411, Schilling v. Quincy Physicians. Is the Attorney for the Appellant ready to proceed? Yes, Your Honor. Please proceed, Counsel. May it please the Court, Counsel. My name is Andrew Mahoney with the firm of Crowder, Quill & Mahoney, here to argue on behalf of Plaintiff Appellant Robert Schilling. This case presents a question of fundamental importance to Illinois jury trials. What happens when a juror explicitly promises, in writing, within a jury note, to abandon their convictions and sign a verdict only to end deliberations? This surrender note created an unprecedented issue. One juror documented their intent to violate their oath, abandon the law and the evidence, and agree to a verdict for a manifestly improper reason. Faced with this unprecedented situation, the trial court denied a request for a mistrial, refused further polling to determine if this juror had changed their position, and entered judgment on a verdict tainted by this documented coercion. We would argue that this Court should reverse because a constitutional right to a unanimous verdict was violated in this case. The surrender note evidenced jury misconduct. And I think what's so unique about this case is the length to which the juror documented their subjective mind in their rationale in coming to this verdict. They stated, I am only signing to end deliberation, underlining only twice. Counsel, obviously this is a very unusual situation. We know that the prim instruction was given after this note was received. Is there anything in the prim instruction that would have spoke to what the juror was saying in terms of, I'm just going to sign to get this over with? Did the prim instruction provide any guidance to that juror with respect to the position they were taking? I don't think it does in this case, Your Honor, because I think what this note does is create such a high probability of coercion that the prim instruction at its heart is an instruction telling the jury that they're to come to a verdict. And I think what this juror said is so unambiguous that this is not a statement that we're having difficulty coming to a verdict. And what about the fact that the jury was polled after they returned a verdict and then the customary polling that normally takes place in that instance? Didn't that provide that juror an opportunity to express that, no, this is not my verdict or that I just signed because I want this to be over? I don't think it does in this case because what's so unique about this note is the juror set forth that I'm going to enter a verdict for the defense in order to end deliberations. And he set forth all, or he or she set forth all the reasoning within that note. So I think when the juror said yes to the question, was this and is this now your verdict, all they're doing is fulfilling that promise that they set forth within that juror note that my rationale is improper, but I'm going to go ahead and do it anyway. And I think the problem here is not that they agreed to the verdict, but that the rationale behind it is improper. And there was never anything done on the record to cure that improper rationale. But the prim instruction came after the note and before the verdict, correct? Yes, Your Honor. So wasn't that a step that the court took to deal with the note that was tendered? I think that that doesn't remove any idea of the improper rationale because I think this juror had already abandoned their oath. And there's a line in People v. Richardson where it says the oath itself preserves the integrity of the jury trial process by impressing upon the jurors their sacred duty to render a true verdict in accordance with the law and the evidence. And I think what we're asking here is or we're assuming then in that case is that if the juror is told or given the prim instruction that they've already abandoned their oath and we're assuming that they pick it back up by forcing them into continued deliberations. So how did the judge abuse his discretion in this case? I think in this case the abuse of discretion standard, the amicus brief included that U.S. v. Taylor case that talked about the abuse of discretion standard being a range of acceptable outcomes. And in this case I think it's my interpretation that there is almost an implied recognition that the rationale contained within the surrender note is improper. Because the appellate court went, they provided an interpretation and they said, well, the surrender note is actually or a reasonable interpretation would be that it's a plea for help. And the defense said that it's speculation that the juror didn't change their mind. And I think all that is an implicit understanding or admission that the language of the note creates a problem. There is a definite problem created by that language and the fact that it wasn't rebutting. And I want to touch on that word speculation because Counsel, you didn't answer Justice Neville's question. How did the judge abuse his discretion? Oh, I apologize. I got sidetracked. So within that idea there's a range of acceptable outcomes. I think here there was left on the record an unrebutted documented rationale that wasn't proper, that was never properly dealt with. And I think that goes to this idea of speculation that in order to make the verdict work here, we have to speculate about what that juror did after the prayer instruction was issued. And we use the term speculation, the defense used the term speculation, the appellate court used the term speculation. And ultimately I think that there is one clear way in this case in which we can all stop using that word. And that's if there had been some further polling. And what would that further polling look like? I know there was a motion for mistrial and that was denied and you indicated in your brief there should have been further polling. We don't want to get into the details of the deliberations of the jury. At the same time I know that there's case law cited about perhaps a way to do that. What would that look like? I think in this case looking at the case of U.S. versus Patah that was cited in our briefing is instructive in this case. Because in that case the jury or the court recognized that there is this extremely important interest of deliberative secrecy. But that abuts the interest of making sure that the jury is actually doing their job and following the law and the evidence. And in this case it's our position that deliberative secrecy was pierced by that subjective juror note where they came out and they said this. And in that case I think follow-up polling or questioning of the jury would be appropriate. And the case of U.S. versus Patah set forth some example questions. And they were very careful to avoid getting into the substance of the deliberations. They didn't ask about the evidence. What they asked were more open-ended questions such as whether or not the jury is deliberating whether or not they're following their oath. Whether or not they're following the law. And in that case there were some disruptive actions by one juror and there were questions about that. Did this juror lay hands on anyone? So in this instance we don't know who the author of the note was. So are you suggesting that the trial court should have called each juror in separately and asked the questions or spoke with the jury as a whole when they had come out with their verdict? I think the best case or best way to approach this in this case would have been to poll each juror individually. Aside from the polling that did take place? Yes, yes. So what's the wording of the polling that you would suggest should have taken place with respect to each juror? I think that looking at the case of U.S. versus Patah, the court outlined a procedure. And there were questions asked such as whether the juror was personally experiencing problems with deliberations without saying anything about the way the votes were leaning. Whether the jurors were discussing the evidence and whether the jurors were calling the court's instructions in the law. And in this case I think that that questioning needed to be a little bit more targeted because of this issue created by the surrender note. I think they needed to ask the juror or all jurors, did you write the note? And if they did, to say, tell me more about this. Are you still experiencing problems or has your rationale changed? Because in that way we eliminate this idea of speculation and we can correct the record. Because in this case the court actually did, after polling, question the juror foreperson about the irregularity on the verdict form. And I think the court said something along the lines that they wanted to make sure the record was clear about that. And I think that the court did clarify the record there. But I think that is what is missing in the case of the surrender note here. Is there is not clarity on the record that the juror did in fact recant the note and then vote for a proper purpose as is required under Illinois law. So you're suggesting that the judge should have polled the jurors individually outside the presence of the jurors. Or the, yeah, I mean, outside the presence of the other jurors, just individually. Yes, Your Honor. And I think that way, in my mind, that way would reduce any coercive pressures upon that juror. Because if, I think there was a lot of difficulty coming to the verdict in this case. And if there are coercive pressures coming from other jurors that could be sought out without the presence of those other jurors. So I think that would be the best way to do it, as was done in the case of U.S. v. Patak. So by failing to do more extensive polling, the judge abused his discretion. That is our opinion, Your Honor. Because I think that leads to, there wasn't any correction of this. And the only way that we can come to terms with the verdict in this case is to essentially interpret the surrender note away from what was meant. Or assume, without any evidence, that the juror did change their mind. I think that's a problem we're left with, Your Honor. And ultimately, what this means is that there was not a unanimous verdict in this case. And that is a right under the U.S. Constitution. And I think what is so unique about this case, and I touched on this briefly. And the defense cited to the People v. Walker case. And it said that because we are not privy to jurors' subjective thoughts. And I think that is what is so unique about this note, is there are a myriad of cases where the juror foreperson or someone else writes a note. And they give their opinion of the state of juror deliberations. They say, well, we're having trouble coming to a verdict. Or this other juror is not understanding the law or the evidence. But I searched all across any authority I could find. I could not find anything where a juror was saying, I am not agreeing with this. I am doing this for this improper reason. This is not one juror's rationale about what another juror is doing or thinking. This is a juror saying, I think this. And they said that with absolute clarity in this case, there is no room for interpretation or ambiguity in this case as far as what was set forth in that note. And I think that where this note left the court was it created such a heightened risk of coercion. And it created a heightened need for that additional polling as well. And in this case, there was, as we set forth in the record, there was one juror who gave a paused, loud sigh and a hesitant yes. And that characterization was not contested at the level of the trial court. And I think that that is a situation where it creates some sort of heightened need to follow up in this case. I think if that happened on its own without the note, that's not really problematic. But the fact that it happened with the note, I think, created that additional need for more polling. Because it's this idea under the case of Filippi Act that the entirety of the record must be searched to ascertain the meaning of the verdict. And in this case, you have multiple statements within the same surrender note that the juror did not agree with the verdict. And then you have what happened in polling as far as this juror had a hesitant expression in the jury polling. And the defense also brings up this idea that, well, the jury continued deliberating after this and the criminal was given. They continued deliberating for another, I think, 50 minutes or so. And in that case, I don't think that provides evidence that this juror, the author of the surrender note, actually continued deliberating. Because he or she wasn't really left with a choice. Because the judge sent them back to continue deliberating. And we really have no idea what happened. All we have is the evidence on the record of the surrender note. So we're assuming that this juror continued deliberating, changed their mind, recanted that. But the problem is is there's simply no evidence of that in this case. And another thing that makes this case so unique is the trial court talked about how there are ebbs and flows in deliberations, that oftentimes jurors do change their mind. But that goes back to that idea of deliberative secrecy. We often don't know or see that. And what is so unique about this case is we have documented evidence of a juror on that first making up their mind. And there's nothing after that to demonstrate a change of mind. And I will tackle one more brief point that was raised in the amicus brief, that the idea of the prim instructive, because the appellate court said that the prim instructive can never be coercive. But if that is the case, then that would constitute a mechanical application of a rigid formula, which was condemned by the court in Kimball. And I think typically the prim instruction would not be coercive. But I think in this case, given the heightened risk, it certainly was. So unless there are any other questions, I think that's all I have at the moment. Thank you, counsel. Is the attorney for the appellee ready to proceed? I am. Please proceed, counsel. Good morning. James Hansen for the appellees. This court should affirm the Fourth District's unanimous decision in upholding the trial court's denial of the appellant's motion for mistrial and request to conduct further polling of the jury. I'd like to first start by addressing the mistrial. Plaintiff asked for a mistrial after receiving the surrender note. And I think what we have here is a timeline that the court needs to look at, which most importantly is after the note came, we did not have the verdict signed by that individual. That note said, I am signing the verdict. However, as this court will see in the record, we did not receive the verdict simultaneously with that note. We received the note, and that juror, had he felt or she felt convicted of that premise in that position, could have immediately signed that verdict, and we could have got the verdict form with the note. They could have also signed the verdict form at any point in time prior to 9-40, when they were brought back in between 9-40 and 10-10, into the courtroom when the prim instruction was given. If the court looks at the record, you will see on the day of November 2nd, the jury deliberations began at 9-02 that morning. We got the note at around 9-40, so 38 minutes had passed. The court brings the jury in, issues the prim instruction, and the jury actually deliberated longer after they got the prim instruction than prior to receiving the note. My point in all of that is, it is our position that prim instruction did exactly what it should do in these types of cases. Juries deliberate and have all sorts of back and forth. People get rooted in their positions. People have very strong opinions. Can we assume that in this case? It's pretty strong language. I agree. There's cases that discuss individuals, for instance, the Walker case where the juror note came back and said, we have a juror who wants to put their definition of burglary above the law. It wasn't as strong as this. But I think it's important in the jury deliberation process, in this case, not only do they go back and deliberate, we got another question on the standard of negligence. And the jury clearly, based on that note, was having further discussions. Again, had the individual who wrote the note felt so strong and convicted, we could have gotten that verdict form signed back at any point in time prior to 11 a.m. without A, the additional question we received. And I think in this case, the court did not abuse its discretion by issuing the prim instruction. The language on the record was the court followed exactly as the prim instruction stated. And the prim instruction tells the jurors, do not give up your convictions. I think what we've heard, not only at the trial court level, but at the appellate court level, there basically is no remedy other than a hung jury in this case from the appellants. I think the further polling, if we get into that, that sets this court, if it's to follow that rationale, down a very slippery slope. And what I'm getting at is the premise that is being argued is that it was juror 34 because of the pause and the sigh. Let's assume the further polling took place as plaintiff has requested at the trial court level to ask, are you the individual who wrote the note and to conduct further polling? What if juror 34 said, no, I didn't write the note. I'm just exasperated and finally glad this is all over. What is the trial court to do? What if we now have an individual who, when polled, says, pauses and rolls their eyes? Is the trial court to conduct further polling? What if the individual looks down? What if they look up? What if they cough? What if they shrug their shoulders? The point in all of that is, as the Hill case said in the Fifth District, a pause and a yes does not equal no. What we had in this case was a pause and a yes. We did not have any juror that was polled that gave a dissenting remark. And so counsel, was every juror provided the opportunity to express dissent or disagreement with the verdict? Yes. They were polled. The standard question, which goes back to, was this then and is this now your verdict? We went down the road, and every single juror was given an opportunity to express yes, no, or their dissatisfaction with that outcome. And, in fact, again, every one of them said yes. I think the problem we have is if the decisions are overturned, the trial court judge is left with, okay, I'm really looking at subjective versus objective. We have the objective answer, which is the yes or the no, or if somebody said something else, much like the Fourth District Beasley case where the juror said, I guess, okay, that was a different answer. We had the other case, which was Kellogg, where he said, can I change my answer? We didn't have any of that. We had a pause and a yes. And what we should not do is infer what that means outside of what the juror answered. So as far as the polling goes, we believe the trial court acted within its discretion. The trial court properly gave the jurors the opportunity to answer yes, no, or say something else. None of them dissented. All we have is the pause and the sigh, and it is our position, again, that that is not enough to conduct further polling of that specific juror. We believe that the poll was appropriate and proper, and the verdict should stand. Counselors, I have a quick question. When you talk about the timeline and that, you know, it was 55 minutes from the prim to the verdict and other things, we don't have any way of knowing, though, that at the time they went back that it was 11 to 1, do we? No. No, I agree with you. In fact, we don't know what the breakout was. The juror note we got at the night of the first deliberation simply just said we're at an impasse and we don't think continuing on, no matter how long we're here, will break the impasse. The trial court at that point in time, we discussed sending them home for the night. They deliberated a little further. They came back the next day, and at no point in time on the second day did we get any further note from the jury that they were deadlocked. We got the note that's at issue in this case, but at no point in time did we ever get anything again that said they were at an impasse or a deadlock. So this 55 minutes that went by, it doesn't necessarily mean that the juror that wrote this note was continuing to deliberate. It just means that jurors were deliberating. I guess I have to concede that question because we don't know who was deliberating and doing what. We can only assume that they were all in the deliberation room doing the discussion and having further communications. I can say we did get a second, another question that came out after the note and after the prim instruction, and that was the question on standard of care. So clearly, individuals were discussing the matter and had questions. Can I say it was the individual from this note? No, I can only assume that we had jurors back there doing their deliberations. As to the mistrial, I think the other thing I want to stress is this court has given guidance on various factors that need to be considered for the court in declaring a mistrial. And I think this case is a lot different than some of the other criminal cases that have been reported on. This case was six days of medical testimony. It was a Liz Frank fracture, which is something, quite honestly, that is not one that comes to trial a lot. It's a foot injury which led to a bologna amputation of the individual. We had four experts that came and testified, three from out of state. So we had six days of testimony on a complex case. The second factor, the length of deliberations, I think the court should note at the time of the noted issue, that jury had only been deliberating for six hours on a case that had been presented over six days. The complexity of the issues, this was a very complex case. Some of the cases that the reports that I've read and the cases that I've read talk about, you know, deliberating actually longer than the trial took. Some of the criminal cases took two days, and the jury was deliberating for over ten hours when the mistrial was declared. So we had a very complex case. What type of communications did the judge receive? Prior to the note, we had had some questions on standard of care, definitions of negligence, and in complex medical negligence cases, those are often issues that the jury wrestles with. So the six factor then on prejudicial impact of forced deliberations, I don't think we had that here. We had the jury that got the prim instruction and went back. They had not sent back any further notes that they were at a deadlock. They did not indicate they had voted numerous times and what that split was. So I think in whether or not to declare a mistrial, the court is given great deference to order further deliberations, and in this case, the trial court did just that. So I think when considering the factors as outlined in the Kimball case, they weigh in favor of the appellees in this case and to uphold the decision of the Court of Appeals. Finally, as it comes to the polling, I think it's critical to also note that the cases talked about, and specifically the Kellogg case, the trial court, that judge is in the best position to make the determination, hearing the response, seeing the demeanor, and observing the juror. And the trial court has given great deference on an abuse of discretion standard. And the courts have gone on to say, we are not going to put ourselves back in the trial judge's shoes. The trial judge is the one who's in the best position to make that determination at the time when he hears what is presented. And in this case, that's exactly what Judge Larson did at the trial court level. He was the one who was there who heard the sire to pause. It is his decision, and it should be given great deference. In this case, not to pull that juror further. I think the Cabrera case also talks about when, in that case, the trial judge, I would say, even went a little bit further than what we had in our case. The trial judge there was dealing with a juror during polling that says, can I say what I have to say or do I have to give you a yes or no answer? And the trial judge says, you need a yes or no answer. The juror went on to say, well, I find my own personal mind. And the judge cut her off, asked for a yes or no, got the yes or no. And that decision was affirmed. So no further polling was needed. So finally, I would just say the trial judge in this case acted within his discretion when he is there to see that reaction, to see how the juror responded. And that should be given great deference. In closing, we would ask the court uphold the decision and affirm the court of appeals. Thank you. Thank you, counsel. Any rebuttals? Yes, Your Honor. Any last words? I wanted to touch on that idea that the verdict was not contemporaneous with the note. Once again, that goes to the idea that we just don't know what was going on in that note. We have no idea of whether this was a final holdout or whether or not there were additional jurors. This argument involves speculation. We don't know whether the author signed this additional note and as far as anything else, whether or not the juror went back and did that, it's all, once again, speculation. What I think that that reveals is the—well, really the defense's entire argument is based upon speculation. We speculate that the author changed their mind. We speculate that they started listening to the instructions again. But once again, there is one clear way to make sure that there is no speculation in this case, and that would be some questioning of that juror. Now, our position is it was improper, or the court should have declared a mistrial upon the note because we think that event was of such a magnitude that created an unfair trial, but the mistrial was not declared. And really to remove all these speculative arguments on everyone's parts, the way we get past that is with further polling, is by asking the jury. I completely agree with the defense when they say this is a slippery slope and this is not a run-of-the-mill case. I would not recommend in-depth polling for every case, but this is a very rare circumstance. In this case, I think what we're left with is a result where we are— where at least there's a lot of speculation in attempting to make that verdict fit or that surrender note fit with the eventual unanimous verdict requirement. And in that case, the only way you can make it fit is to speculate, and that is an outcome that is problematic, that cannot stand under Illinois law, and that is where the abuse of discretion comes in, is we have an untenable result here. It is a—when looking at the entirety of the record, it is a non-unanimous jury trial. I'll touch briefly upon the factors in declaring a mistrial. I'll highlight that courts have repeatedly said that the most important factor in declaring a mistrial is a juror's own statements about whether or not it was deadlocked, its ability to reach a verdict. And in this case, that was stated repeatedly until—I think it was stated once, and then it was stated and the jury note came out, and then the deadlock was confirmed by the juror foreperson after the note came out and the print instruction was read. So I do agree that typically the trial court is in the best position, but here we are years later with all these questions trying to make this work, and I think that had some additional questions been asked, that removes a lot of the speculation and we're left in a better position to make that verdict work. So with that, Your Honors, unless there's any other questions, thank you very much. Thank you, counsel. Case number 131411, Schilling v. Quincy Physicians, is taken under advisement as agenda number four. Mr. Mahoney, Mr. Hanson, we thank you for your arguments today.